Salmeron v. Garland

BIA
Nelson, IJ
A206 487 485

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of June, two thousand twenty-one.

PRESENT:
>
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

_____

WALMER SALMERON, AKA ENRICO PALLAZO, AKA ENRIQUE ROSALES,
>  *Petitioner,*

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
>  *Respondent.*

19-3590
NAC

_____

FOR PETITIONER:      Andrea A. Saenz, Bridget P. Kessler, Brooklyn Defender Services, Brooklyn, New York; Allen W. Burton, Ethan M.

Scapellati, Colleen Powers, Redwan Saleh, O'Melveny & Myers LLP, New York, NY.

**FOR RESPONDENT:**          Joseph D. Hardy, Trial Attorney, Office of Immigration Litigation, Joseph H. Hunt, Assistant Attorney General; Anthony C. Payne, Assistant Director; United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that this petition for review of a decision of the Board of Immigration Appeals ("BIA") is DENIED.

Petitioner Walmer Salmeron, a native and citizen of Nicaragua, seeks review of an October 16, 2019 decision of the BIA affirming a February 6, 2018 decision of an Immigration Judge ("IJ"), which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Walmer Salmeron,* No. A206 487 485 (B.I.A. Oct. 16, 2019), *aff'g* No. A206 487 485 (Immigr. Ct. N.Y.C. Feb. 6, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA, reaching only the grounds for denying relief on which the BIA relied, *i.e.,* the Nicaraguan government's ability to protect Salmeron and

2

Salmeron's failure to meet his burden for CAT relief. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Lin Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 122 (2d Cir. 2007). Contrary to Salmeron's position, the BIA was not required to address changed circumstances related to the timeliness of his asylum application or the nexus determination because the agency's other grounds for the denial of relief were dispositive. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."); *Lecaj v. Holder*, 616 F.3d 111, 114 (2d Cir. 2010).

Salmeron claimed that members of the Zavala family attacked his mother and brothers with machetes, killing his mother, and that the Zavalas will kill him if he returns to Nicaragua. As to asylum and withholding of removal, the agency denied relief because Salmeron did not establish that the Nicaraguan government would be unable or unwilling to

3

protect him. Substantial evidence supports that determination.

Where, as here, an applicant for asylum and withholding of removal did not experience past persecution, he has the burden to demonstrate a well-founded fear or likelihood of future persecution. 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. §§ 1208.13(b), 1208.16(b)(2). "To qualify as persecution the conduct at issue must be attributable to the government, whether directly because engaged in by government officials, or indirectly because engaged in by private persons whom the government is unable or unwilling to control." *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (internal quotation marks omitted); *see also Matter of A-B-*, 27 I. & N. Dec. 316, 337 (A.G. 2018) ("The applicant must show that the government condoned the private actions or at least demonstrated a complete helplessness to protect the victims." (internal quotation marks omitted)).

Salmeron testified that two of his mother's killers fled and remain at large, but the third was convicted and received a sentence of more than ten years. He said that, after the attack, one of the attackers who remains at large continued to make threats, causing his brother and sister to obtain

4

protective orders. But there were no additional physical attacks. Based on this testimony, the agency reasonably concluded that Salmeron did not establish that the Nicaraguan government was unable or unwilling to protect him. The prosecution and conviction of one of the attackers and the issuance of protective orders showed the Nicaraguan government's willingness to protect Salmeron's family. *See Scarlett*, 957 F.3d at 330–32; *cf. Pan v. Holder*, 777 F.3d 540, 544-45 (2d Cir. 2015).

Additionally, the record does not support Salmeron's argument that the Nicaraguan government is unable to protect him because, in defiance of the protective orders, the Zavalas "continued to assault the Salmeron family" after the murder. Pet'r's Br. at 26. Salmeron testified that the Zavalas had not physically attacked his family since the 2014 attack and, while his brother attested to additional threats before the protective orders were issued, he did not state that the protective orders were ever violated. In sum, Salmeron provided no evidence to support his speculative contention that the Nicaraguan government will be either unable or unwilling to protect him. *See Scarlett*, 957 F.3d at 332 (concluding that to establish an inability or unwillingness

5

to protect, "an alien must show either that the government condoned the action or, even if it did not, that it was completely helpless to protect the victims"); *Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record . . . [applicant's] fear is speculative at best.").

Salmeron also argues that the agency ignored evidence that the Zavalas could act with impunity because several of their family members were government or police officials. But he has not explained how these official relationships were relevant, given the prosecution and conviction of one of the attackers notwithstanding these relationships. Salmeron further argues that the agency ignored evidence of widespread corruption in the Nicaraguan government. But the IJ reasonably concluded that much of the evidence submitted by Salmeron in support of this argument was not relevant to his situation. In any event, "generalized language culled from" these sources does not constitute the "particularized evidence" necessary to support his claim. *Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005).

Finally, Salmeron has not identified error in the agency's denial of CAT relief. He had the burden to show

6

that he will "more likely than not" be tortured in Nicaragua and that such torture would be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official . . . or other person acting in an official capacity." 8 C.F.R. §§ 1208.16(c), 1208.17, 1208.18(a)(1); *see Khouzam v. Ashcroft*, 361 F.3d 161, 170–71 (2d Cir. 2004). Acquiescence "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). "A *private* actor's behavior can constitute torture under the CAT without a government's specific intent to inflict it if a government official is aware of the persecutor's conduct and intent and acquiesces in violation of the official's duty to intervene." *Pierre v. Gonzales*, 502 F.3d 109, 118 (2d Cir. 2007); *see also Khouzam*, 361 F.3d at 171.

Contrary to Salmeron's argument that the agency did not adequately address his CAT claim, the agency's decisions provided the "certain minimum level of analysis" required for meaningful judicial review, *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005), particularly given the overlap with

7

the ground for the denial of asylum and withholding of removal. Substantial evidence supports the agency's determination that Salmeron did not meet his burden to provide particularized evidence that he was likely to be tortured with the Nicaraguan government's acquiescence. The same evidence that supported the agency's conclusion about the Nicaraguan government's ability to protect also forecloses Salmeron's CAT claim. In sum, Salmeron's evidence did not establish "that government officials kn[e]w of or remain[ed] willfully blind to an act and thereafter breach[ed] their legal responsibility to prevent it." *Khouzam*, 361 F.3d at 171.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8